STENECK TRUST COMPANY (IN LIQUIDATION), A CORPORATION OF NEW JERSEY, AND WILLIAM H. KELLY, AS COMMISSIONER OF BANKING AND INSURANCE OF THE STATE OF NEW JERSEY, ETC., PLAINTIFFS-RESPONDENTS, v. STENECK CLUB, INCORPORATED, A CORPORATION OF NEW JERSEY, DEFENDANT, AND GEORGE W. STENECK, DEFENDANT-APPELLANT.

Submitted May 2, 1933—Decided December 16, 1933.

Before BROGAN, CHIEF JUSTICE, and Justices TRENCHARD and HEHER.

For the appellant, *Merritt Lane.*

For the respondents, *John Milton.*

PER CURIAM.

Plaintiff Steneck Trust Company, in liquidation, and the commissioner of banking and insurance, brought suit against the Steneck Club, Incorporated (hereinafter referred to as Club), and appellant, George W. Steneck (hereinafter referred to as appellant), to recover on two promissory notes, one for $500 dated April 27th, 1931, and the other for $65,500 dated April 7th, 1931, each made by Club to the order of itself, payable at the Steneck Trust Company.

The notes bore the endorsement of the Club, and also the endorsement of the appellant under the words "for value received notice of demand and protest is hereby waived and I hereby guarantee the payment of the within note."

Appellant filed an answer in which he set up (1) that he signed the notes purely for the accommodation of the trust company; (2) that at the time of the signing of the notes there was in the possession of the trust company individual notes of members of the club, together with shares of stock of the trust company, which notes and stock the trust company held as collateral security for the payment of these notes and agreed to hold the collateral and to reduce the notes by application of the collateral and that notes and shares of sufficient value to liquidate these notes sued on are in the possession of the trust company and that there is nothing due on the notes sued on; and (3) that the shares of stock of the trust company heretofore mentioned, had been disposed of by the trust company and the notes released without notice to the appellant and that he has been deprived of collateral to which he was entitled.

Plaintiff moved to strike the answer as "sham and frivolous." The motion was supported by the affidavit of a special assistant deputy commissioner of banking and insurance, which went to the existence of the notes, and purported to trace them back to May 26th, 1927; that he had made numerous examinations of the assets and liabilities of the trust com-

pany and never found any notes of any individuals held as security as collateral or otherwise, nor any note of the club, and that none were found when the commissioner of banking and insurance went into possession; that there was in one of the vaults an envelope marked "915 shares—Steneck Trust Company," and in the envelope were a number of certificates of stock of the trust company made out to various persons with the usual power of attorney, but there were no notes of any kind in the envelope; that the records of the trust company did not disclose any authority for the making of the agreement to hold the notes and stock as collateral security, alleged in the defendant's answer; that in May, 1927, appellant was assistant secretary and assistant treasurer and a director of the trust company, and that later he became vice-president, and at all times was an active officer and active participant in the affairs of the trust company.

This affidavit was met by the affidavit of the appellant who said that: the note dated May 26th, 1927, was not the original note; that prior to the incorporation of the Club, employes of the trust company had been purchasing stock of the trust company and obtained the money to make the purchases by discounting their notes; that they reduced the notes by payments from time to time; that subsequently all the notes were gathered together and the Club executed a single note for the full amount "which was discounted in place of the individual notes of the employes, and those individual notes, together with the stock of the employes endorsed for transfer, were held in the bank's vaults as collateral security to the payment of the original notes;" that this stock and the individual notes were kept in the vault of the trust company, being in the possession of the secretary and treasurer of the company, one Joseph Tighe; that the agreement was that this stock and the notes should be held as collateral security for the note of the Club; that after the original note of the Club had been discounted by the trust company and carried by it for some time, the commissioner of banking and insurance requested the trust company to secure the endorsement of the note by an officer of the trust company; that the appellant acted upon that request and personally endorsed the note

of May 26th, 1927, which was a renewal of previously existing notes of the Club; that the notes sued on were renewals of the notes endorsed by him under the same condition; that the stock and notes were examined by examiners of the department of banking and insurance on several examinations; that on the day the trust company was closed the notes and stock were in a drawer of the paying-teller of the trust company where they were kept for collection from the makers of the notes; that the notes were originally in his possession, but that for the convenience of collection he left them with an officer in the trust company and they were kept locked in a drawer of the paying-teller's desk; that they were in the bank on the day the bank closed and he did not remove them; that since the trust company was closed he had no access to its records; that under the agreement and understanding between him and the trust company, the stock and notes should be first realized upon.

Other affidavits were submitted to some of which brief reference will hereafter be made.

The court below struck out the answer as sham. In view of the affidavits we think the court was not justified in striking the answer as sham. The affidavit of the appellant purports to be based on actual knowledge. He goes into detail with respect to the agreement between himself and the bank as to the existence of the notes of individual members of the Club and the shares of stock held as collateral security by the bank for the payment of the notes endorsed by him. We think it is immaterial whether there was an express agreement between himself and the bank. He was entitled to the benefit of the collateral, if his statements were true. If his statements were true the notes and stock were either in the possession of the trust company or, without notice to him, had been disposed of, thereby depriving him of the collateral to which he was entitled.

The affidavits of officials of the trust company, who deny that the notes were there in their possession, are contradicted by the affidavits upon the part of the appellant, and indeed by one of plaintiff's affidavits it appears that the notes were

in the possession of the trust company. There is also the affidavit by a bank examiner to the effect that "at the close of business June 5th, 1926, I made a list of notes held by the Steneck Trust Company made by the employes of the company to secure which the trust company held as side collateral shares of its own stock and shares of City Trust Company stock."

It seems to us that the question as to what were the actual facts could only be determined upon a trial which would permit the cross-examination of the affiants and the production of records, and consequently, it seems to us to have been erroneous to strike the answer, which action we are persuaded was the result of misapprehension upon the part of the judge as to the substance and sweep of the affidavits presented.

The respondents contend that the answer was frivolous if not sham. We find ourselves unable to take that view for the reasons hereinbefore suggested.

The judgment below will be reversed and the record remitted to the Court of Common Pleas to be there proceeded with in due course. Costs to abide the final result.